UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIDEWATER INVESTMENT SRL *et al.*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    *Defendant*. | Civil Action No. 17-1457 (TJK) |

## MEMORANDUM OPINION

Plaintiffs in this action, a foreign corporation and one of its subsidiaries, have filed a complaint seeking recognition and enforcement of an arbitration award entered by an international tribunal against the Bolivarian Republic of Venezuela. Venezuela was served by diplomatic pouch on April 6, 2018, and after it failed to respond to Plaintiffs' complaint or otherwise appear in this action within 60 days of the date of service, Plaintiffs filed a motion for default judgment. For the reasons explained below, the Court will grant the motion and enter judgment for Plaintiffs.

**I.    Background**

    **A.    The ICSID Convention**

The International Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention" or "Convention"), Mar. 18, 1965, 17 U.S.T. 1270, 330 U.N.T.S. 3, is a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017) (citing Anthony R. Parra, *The History of ICSID* 11–12, 24–26 (Oxford 2012)). The Convention provides a framework for resolving

investment disputes between a "contracting state" to the Convention and a national of another contracting state, and it established the International Centre for Settlement of Investment Disputes—commonly referred to as "ICSID"—to administer arbitral proceedings, including the proceeding at issue in this case. ICSID Convention arts. 1–3, 25. ICSID "has the authority to convene arbitration panels to adjudicate disputes between international investors and host governments in Contracting States." *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, No. 17-102, 2018 WL 4705794, at *1 (D.D.C. Sept. 30, 2018) (internal quotation marks omitted) (quoting *Mobil Cerro Negro*, 863 F.3d at 101)).

Either a contracting state or a national of another contracting state may request that ICSID convene an arbitral tribunal. *See* ICSID Convention art. 36. The tribunal will then, upon considering the dispute, issue a written decision—called an "award." *Id.* art. 48. If either party objects to the award, it may seek an annulment, equivalent to pursuing a judicial appeal, before an *ad hoc* committee of three individuals who were not members of the original panel. *Id.* art. 52. Any award entered by ICSID under the Convention, which includes any decision interpreting or annulling the award, is binding on the parties. *Id.* art. 53. ICSID, however, is "not empowered to enforce awards." *TECO Guatemala*, 2018 WL 4705794, at *2. Instead, contracting states are required to "recognize an award . . . as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention art. 54.

The United States is a contracting state to the Convention, *see* ICSID, *List of Contracting States and Other Signatories of the Convention* (Aug. 27, 2018), and Congress has passed implementing legislation to give effect to the Convention's requirement that contracting states recognize and enforce ICSID awards. Specifically, 22 U.S.C. § 1650a(a) provides: "An award of

an arbitral tribunal rendered pursuant to [the ICSID Convention] shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." That section further provides that the Federal Arbitration Act "shall not apply to enforcement of awards rendered pursuant to the convention." *Id.* Lastly, § 1650a(b) confers exclusive jurisdiction over these actions on federal district courts.

B.     **Tidewater's Arbitration Proceedings**

Plaintiff Tidewater Investment SRL, which is the corporate parent of Plaintiff Tidewater Caribe, C.A., (collectively, "Tidewater") is a company organized and existing under the laws of Barbados. *See* Compl. ¶ 2; ECF No. 14-2 ("ICSID Jurisdiction Opinion") ¶¶ 1–4. On February 16, 2010, Tidewater and several affiliates commenced an arbitration proceeding against Venezuela under the ICSID Convention concerning Venezuela's alleged expropriation of Tidewater's investments in certain ventures relating to the oil and gas industry in Venezuela in 2009. Compl. ¶ 13. Tidewater argued that ICSID had jurisdiction to arbitrate Tidewater's claims against Venezuela arising under two sources—the bilateral investment treaty between Venezuela and Barbados (the "BIT") and a Venezuelan statute providing protections for investments. *Id.*

On February 8, 2013, after briefing and a hearing, a panel of arbitrators issued a jurisdictional decision finding that only Tidewater's claims arising under the BIT were arbitrable under the Convention. *See* ICSID Jurisdiction Opinion. Following additional briefing and a hearing on the merits, on March 13, 2015, the panel issued a written opinion and judgment in favor of Tidewater—the Award—in the principal amount of $46.4 million plus interest accruing at an annual rate of 4.5% until full payment is made. See ECF No. 1-5 ("ICSID Award") ¶ 217.

The Award also instructed Venezuela to partially reimburse Tidewater for its arbitration costs at an amount of $2.5 million. *Id.*

On July 9, 2015, Venezuela filed an application for annulment of the Award. ICSID convened a three-member *ad hoc* committee, which, after further briefing and a hearing, issued a decision on December 27, 2016, partially annulling the Award but leaving intact the remainder. *See* ECF No. 1-6 ("ICSID Annulment") ¶ 230. Specifically, the amount of the Award was reduced to $36.397 million, and Tidewater was instructed to partially compensate Venezuela for its annulment-proceeding costs. *Id.* Tidewater alleges that this amounted to $122,069, leaving a net award of costs owed by Venezuela of $2,377,931. *See* Declaration of Miguel López Forastier ("Forastier Decl."), ECF No. 14-1, ¶ 6.

According to Tidewater, Venezuela has failed to pay any part of the final amount of the Award. *See Id.* ¶ 13.

C.  **Tidewater's Lawsuit and Attempts to Serve Venezuela**

On July 21, 2017, Tidewater commenced this action, filing a complaint requesting this Court to recognize the Award and enforce Venezuela's pecuniary obligations under it. ECF No. 1 ("Compl.").[1] The complaint sets forth a single count, under 22 U.S.C. § 1650a, for "recognition of the final award." *Id.* ¶¶ 30–35. Tidewater requests that, upon recognition of the

---

[1] On March 16, 2015, Tidewater also filed a petition in the Southern District of New York seeking *ex parte* recognition of the Award as a judgment of that court, which the court granted. Compl. ¶ 29. Venezuela, however, moved to vacate the judgment on the ground that ICSID awards can only be enforced in the United States by commencing a plenary action under the Foreign Sovereign Immunities Act ("FSIA"). *See Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 15 Civ. 1960, 2018 WL 3860270 (S.D.N.Y. Jan. 22, 2018). Following a Second Circuit decision concluding that ICSID creditors indeed must enforce awards under the FSIA, the district court granted Venezuela's motion to vacate and dismissed the action without prejudice. *See id.* (citing *Mobil Cerro Negro*, 863 F.3d 96).

4

Award and its pecuniary obligations, the Court order Venezuela to pay those outstanding amounts. *Id.* at 8.

According to counsel for Tidewater, on the same day that it filed its complaint in this matter, counsel emailed a copy of the complaint to Venezuela's counsel and asked if its counsel would accept service. Forastier Decl. ¶ 8. Venezuela's counsel, about three weeks later, refused. *Id.*

Tidewater next attempted service through the procedures established under the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, to which Venezuela is a party. *See* Hague Conference on Private International Law, *Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* (Nov. 29, 2018); Forastier Decl. ¶ 9. Under the Hague Convention, member states are required "to establish a central authority to receive requests for service of documents from other countries." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)); *see also* Hague Convention, arts. 5, 6. Tidewater's counsel indicates, however, that despite the Hague Convention's mandate, "the Venezuela Central Authority has failed to serve the summons, complaint, and accompanying initiating papers" on Venezuela. Forastier Decl. ¶ 9.

Concluding that service could not be made under the Hague Convention, Tidewater requested that the Clerk of Court serve copies of the summons, complaint, and notice of suit, together with a translation of each into Spanish, on the United States Department of State for diplomatic service pursuant to 28 U.S.C. § 1608(a)(4). *See* ECF Nos. 10, 11. And on May 7,

5

2018, the Clerk of Court filed on the docket a letter from the Department of State providing proof of service on Venezuela on April 6, 2018. *See* ECF No. 13.

Venezuela did not file an answer within the 60 days afforded by statute, *see* 28 U.S.C. § 1608(d), and Tidewater subsequently filed a motion for default judgment on June 28, 2018, ECF No. 14 ("Mot."). On November 13, 2018, following a status hearing, the Court requested supplemental briefing from Tidewater regarding the propriety of service and the proper standard for recognizing an ICSID arbitration award, which Tidewater provided. *See* ECF No. 18. And on December 6, 2018, upon Tidewater's request and accompanying affidavit, the Clerk of Court declared Venezuela in default. *See* ECF No. 19.

Tidewater's motion for default judgment is now ripe for disposition.

## II. Legal Standard

When a defendant fails to defend its case, a court has the power to enter default judgment in favor of the plaintiff. *See* Fed. R. Civ. P. 55; *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980).[2] But under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.*, "a court cannot simply enter default judgment; rather, out of respect for the principle of sovereign immunity, it must ensure that the plaintiffs have established their claim or right [to] relief by evidence that is satisfactory to the court." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012) (citing 28 U.S.C. § 1608(e)). Although default judgment might be more difficult to obtain under the FSIA than in the ordinary case, 28 U.S.C. § 1608(e) "does not 'require the court to demand more or different evidence than

---

[2] Before a court may enter default judgment against an absent defendant, the plaintiff must first request that the clerk of the court enter that defendant's default. *See* Fed. R. Civ. P. 55(a); *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 239 n.1 (D.D.C. 2007). As noted, the Clerk of Court, upon Tidewater's request, entered Venezuela's default on December 6, 2018. *See* ECF No. 19.

6

it would ordinarily receive.'" *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (quoting *Marziliano v. Heckler*, 728 F.2d 151, 158 (2d Cir. 1984)). And the plaintiff may establish proof by affidavit. *Reed*, 845 F. Supp. 2d at 212.

### III. Analysis

#### A. Jurisdiction Under the FSIA

Before proceeding to the merits of Tidewater's motion, the Court must assure itself that it has both subject-matter and personal jurisdiction. Those questions turn on the intricacies of the Foreign Sovereign Immunities Act.

##### 1. Subject-Matter Jurisdiction

The FSIA "presents the exclusive legal vehicle by which a plaintiff may bring suit against a foreign state." *Reed*, 845 F. Supp. 2d at 209. It grants federal district courts subject-matter jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330. Only the final requirement—that the foreign state not be entitled immunity—warrants discussion here.

The FSIA sets out a "comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). Though the FSIA codified the principle that foreign states are by and large immune from suit in the United States, it provides a set of enumerated exceptions to that general grant of immunity, including, such as here, when a case is brought to "confirm an award made pursuant to . . . an agreement to arbitrate" and the award is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

The Court has little trouble concluding, pursuant to the arbitral award exception, that Venezuela is not entitled to immunity in this action. The Award was issued pursuant to the ICSID Convention, an international treaty (1) to which Barbados and Venezuela were both contracting states, *see* ICSID, *List of Contracting States and Other Signatories of the Convention* (Aug. 27, 2018),[3] (2) that specifically calls for the recognition and enforcement of its awards, *see* ICSID Convention art. 54, and (3) that is in force in the United States, *see* 17 U.S.T. 1270. Courts have routinely reached this conclusion regarding awards issued pursuant to the ICSID Convention. *See Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013) ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do."); *see also Mobil Cerro Negro*, 863 F.3d at 104–05; *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012).

### 2. Personal Jurisdiction

The FSIA also grants district courts personal jurisdiction over foreign states, but it imposes a meticulous procedure for establishing that jurisdiction. *See World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1159 n.5. The statute provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under section 1608." 28 U.S.C.

---

[3] Although Venezuela denounced the Convention on January 24, 2012, *see* ICSID Jurisdiction Opinion ¶ 124 n.249, as permitted by Article 71, that denunciation did "not affect the rights or obligations under [the] Convention of [Venezuela] arising out of consent to the jurisdiction of the Centre given by [it] before such notice was received," ICSID Convention art. 72. Because Venezuela had consented to international arbitration when it signed the BIT with Barbados in 1994, the ICSID tribunal found that Venezuela's denouncement did not preclude jurisdiction over Tidewater's claim under the BIT. *See* ICSID Jurisdiction Opinion ¶ 124, ¶ 124 n.249.

8

§ 1330(b). And § 1608 in turn lays out the specific steps that plaintiffs must take to effect service on a foreign-state defendant. *Id.* § 1608. As the Court of Appeals has explained:

> The Act provides four methods of service in descending order of preference. First, "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." [28 U.S.C.] § 1608(a)(1). Second, "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2). Third, "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned . . . ." *Id.* § 1608(a)(3). And fourth, if none of the first three methods works, a plaintiff can serve the appropriate documents through the Department of State. *Id.* § 1608(a)(4).

*Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). "[A] plaintiff 'must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on.'" *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (quoting *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008)). Though the plaintiff bears the burden of proving personal jurisdiction, when the plaintiff moves for default judgment against an absent defendant, only a prima facie showing is required. *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

Tidewater has shown diligent compliance with the statute's instructions. First, no "special arrangement for service" exists between Tidewater and Venezuela, and counsel for Venezuela explicitly refused to accept service when contacted by counsel for Tidewater. *See* Forastier Decl. ¶ 8; Mot. at 8. Second, Tidewater could not successfully serve Venezuela under the procedures established by Hague Convention, as it appears Venezuela has failed to comply with its obligations to receive and transmit service papers under that framework. *See* Forastier Decl. ¶ 9. As for the third method, Tidewater determined that service could not be made by mail

because Venezuela expressly objected to service by mail when it acceded to the Hague Convention. *See* Dutch Government Treaty Database: Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters: Parties with Reservations, Declarations, and Objections (entry for Venezuela), https://treatydatabase.overheid.nl/en/Verdrag/Details/004235_b#Venezuela. Because service under § 1608(a)(3) was "unavailable," Tidewater properly proceeded to the fourth method— diplomatic service through the Department of State. *Angellino*, 688 F.3d at 773; *see also Azadeh v. Gov't of the Islamic Republic of Iran*, 318 F. Supp. 3d 90, 99 (D.D.C. 2018) (noting that service under § 1608(a)(3) of foreign states that objected to service by mail upon signing the Hague Convention would appear to be "categorically unavailable"). And on May 7, 2018, the Clerk of Court filed a letter from the Department of State verifying that the summons, complaint, and supplementary documents had been served on Venezuela's Ministry of Foreign Affairs under cover of diplomatic note on April 6, 2018. *See* ECF No. 13. The Court therefore finds, in accordance with 28 U.S.C. § 1330(b), that Tidewater has adequately established that personal jurisdiction over Venezuela exists in this action.

### B. Default Judgment on Tidewater's Claim

Tidewater's complaint brings a single claim seeking recognition and enforcement of the Award pursuant to 22 U.S.C. § 1650a. That provision provides, in relevant part, that an ICSID award "shall create a right arising under a treaty of the United States," and that the "pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." *Id.* § 1650a(a).

Few federal district courts have been asked to recognize final ICSID awards. Even fewer have been presented with complaints brought by creditors of a final ICSID award seeking

recognition and enforcement under § 1650a and the FSIA. *See, e.g.*, *TECO Guatemala*, 2018 WL 4705794; *Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367 (S.D.N.Y. 2012), *aff'd*, 735 F.3d 72 (2d Cir. 2013); *Cont'l Cas. Co.* 893 F. Supp. 2d 747; *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru* (*Duke Energy I*), 892 F. Supp. 2d 53 (D.D.C. 2012). Indeed, much of the litigation concerning ICSID awards has focused on the particular *type* of action an award creditor must bring, and particularly whether a creditor may—or must—seek *ex parte* recognition of the award as a preliminary step prior to seeking enforcement of the award's pecuniary obligations. *See Mobil Cerro Negro*, 863 F.3d at 99–100; *see also Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 51–52 (D.D.C. 2015) (concluding that an award-creditor seeking to convert an ICSID award against a foreign state to an enforceable domestic judgment must file a plenary action under the FSIA).

Of course, heeding the Second Circuit's instructions following its decision in *Mobil Cerro Negro*, Tidewater is not seeking *ex parte* recognition of the award, and has instead brought a plenary action under the FSIA in this District, where venue is proper. 28 U.S.C. § 1391(f)(4). Section 1650a provides Tidewater a cause of action in federal court to enforce the financial obligations imposed by the Award, thereby converting the Award to a federal judgment, and this Court has both personal and subject-matter jurisdiction to enter judgment against Venezuela on that claim. Thus, the Court need not consider what procedures, if any, might be appropriate for recognizing the Award through summary proceedings.

Consistent with 28 U.S.C. § 1608(e), Tidewater must establish its claim to relief by evidence satisfactory to the Court. But given the perfunctory role that 22 U.S.C. § 1650a appears to envision for federal district courts, Tidewater's obligation does not appear demanding. Section 1650a mandates that the pecuniary obligations of a final ICSID award "shall be given the

same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a. And "[r]egarding judgments [of another state] . . . , the full faith and credit obligation is exacting." *Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998). A final judgment of one state—or, for that matter, from ICSID—"if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *Id.*[4] And the Award, including the annulment, constitutes a final decision of the tribunal on the question of Venezuela's pecuniary obligations to Tidewater for the expropriating conduct. *See* ICSID Convention art. 53. Thus, the language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of Tidewater's entitlement to any unpaid claims under the Award. *See Duke Energy Int'l Peru Invs. No.1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132–33 (D.D.C. 2012) (noting that the court is "*required* by statute to give [an ICSID award] full faith and credit and confirm it accordingly" (citing 22 U.S.C. § 1650a)).

Tidewater has provided the Court with copies of the jurisdictional opinion, the March 2015 award, and the later annulment decision, the latter two of which were certified by the Secretary-General of ICSID. *See* ICSID Award, Certificate; ICSID Annulment, Certificate. Further, the Court finds no uncertainty in those documents as to the amount of Venezuela's pecuniary obligations under the Award. *Cf. Duke Energy I*, 892 F. Supp. 2d at 56–57 (examining whether remand to ICSID of an award for clarification of the applicable interest rate

---

[4] Indeed, even as to questions of ICSID's jurisdiction, provided that the question has been "fully and fairly litigated and finally decided" by the tribunal, this Court has no authority to relitigate the matter here. *See Durfee v. Duke*, 375 U.S. 106, 111 (1963). In this case, the ICSID tribunal devoted an entire written opinion to that question. *See* ICSID Jurisdictional Opinion.

12

would be appropriate).  And Tidewater's counsel has represented in his declaration that Venezuela has yet to pay Tidewater any amount owed under the Award.  *Cf. id.* at 56 (examining award-debtor's motion to dismiss for failure to state a claim because it had paid the full amount of the outstanding award principal).  That evidence, the Court finds, is sufficient for Tidewater to show that it is entitled to the claimed amounts as the creditor of a final ICSID award under § 1650a.

Because Tidewater has demonstrated to the Court's satisfaction that it is the proper creditor to a valid ICSID award against Venezuela, the Court finds that Tidewater has shown that it is entitled to the relief sought by satisfactory evidence and that default judgment is warranted.

## IV. Conclusion

For all of the above reasons, the Court will grant Tidewater's motion for default judgment in a separate order.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: December 17, 2018